**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

February 18, 2020

Ronald L. Tobia, Esq.
Othiamba Nkosi Lovelace, Esq.
Chiesa Shahinian & Giantomasi PC
One Boland Drive
West Orange, NJ 07052
*Attorneys for Plaintiffs*

Gregory J. Hazley, Esq.
Lauren Bonaguro, Esq.
Richard F.X. Regan, Esq.
Decotiis, Fitzpatrick, Cole & Giblin, LLP
500 Frank W. Burr Blvd, Suite 31
Teaneck, NJ 07666
*Attorneys for Local 825*

David Tykulsker, Esq.
Tykulsker & Associates
161 Walnut Street
Montclair, NJ 07042
*Attorney for Local 15024*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re:**  *P&A Construction, Inc. et al. v. International Union of Operating Engineers Local 825, AFL-CIO et al.*, **Civil Action No. 19-18247 (SDW) (LDW)**

Counsel:

      Before this Court is P&A Construction, Inc. ("P&A") and Utility Systems, Inc.'s ("Utility") (collectively, "Plaintiffs") Motion Requesting Tripartite Arbitration. For the reasons discussed below, Plaintiffs' motion is **DENIED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs are New Jersey corporations claiming to be "single employers" or "joint employers" within the meaning of § 301 of the Labor Management Relations Act ("LMRA"), *as amended*, 29 U.S.C. § 185. (Compl. ¶¶ 1–3.) P&A has a collective bargaining agreement ("CBA") with United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local 15024, AFL-CIO-CLC ("Local 15024"), while Utility has a CBA with International Union of Operating Engineers, Local 825 ("Local 825") (Local 15024 and Local 825, collectively, "Defendants"). (D.E. 19 at 2–3; D.E. 20 at 1; Compl. ¶¶ 8, 12.) Plaintiffs are construction contractors and Defendants are labor unions, and the present lawsuit arises out of a labor dispute between the parties regarding the hiring of operating engineers ("operators"). (*See* Compl. ¶ 23.)

Utility's CBA with Local 825 requires it to employ operators obtained from Local 825's open employment list (Local 825's "hiring hall"), and additionally requires Utility to subcontract work only to those subcontractors who agree to follow the same hiring hall procedure. (D.E. 20-2 Ex. A ("Utility-Local 825 CBA") at 1, Art. 1 ¶ 2.) In October 2018, Local 825 filed five grievances pursuant to the grievance and arbitration procedure set forth in the Utility-Local 825 CBA, for alleged hiring hall and subcontracting violations related to four projects that occurred in Woodbridge and Linden, New Jersey from 2016 to 2018. (D.E. 20-2 Ex. B–F ("Grievances"); *see* Utility-Local 825 CBA Art. XXIV.) The crux of the Grievances is that Utility violated its CBA with Local 825 by subcontracting work to non-signatory contractors, including P&A, who did not follow the required hiring hall procedures. (*See* Grievances.) On October 23, 2018, in accordance with the Utility-Local 825 CBA, these Grievances proceeded to arbitration. (*See* D.E. 20-2 Ex. M; Compl. ¶¶ 27, 28.) Local 825 seeks only monetary damages from Utility, and only with respect to the four past projects. (D.E. 20 at 26.)

Plaintiffs argue that Local 825 claims jurisdiction over operator jobs that they (as joint-employers) are obligated to fill with members of Local 15024 pursuant to a P&A-Local 15024 CBA. (Compl. ¶ 23.) On May 23, 2019, P&A initiated a separate arbitration with Local 15024 "to determine the rights and duties of Plaintiffs in relation to their collective bargaining agreement with Local 15024 Steelworkers." (D.E. 20-2 Ex. N; *see* Compl. ¶ 30.)

Plaintiffs filed suit in this Court on September 23, 2019, requesting an order that Plaintiffs, Local 825, and Local 15024 enter tripartite arbitration to resolve the issue of which union has jurisdiction over Plaintiffs' operator jobs. (Compl. at 13–14.)[1] Plaintiffs claim that, without tripartite arbitration, they risk conflicting decisions in the two bilateral arbitrations. (*Id.* ¶¶ 31–36.) Defendants timely filed their opposition, arguing that there is no risk of incompatible arbitration decisions as they are not claiming the same jobs because (1) there is no evidence in the record that Plaintiffs are a single employer or joint employer under the LMRA, (2) Local 825 only claims certain Utility jobs pursuant to the Utility-Local 825 CBA, and (3) Local 15024 only claims certain P&A jobs pursuant to a P&A-Local 15024 CBA. (D.E. 19, 20.)

---

[1] Plaintiffs also requested a stay of the bilateral arbitrations and certain proceedings initiated by Local 825 before the National Labor Relations Board but withdrew this request on November 21, 2019. (Compl. at 13–14; D.E. 24.)

## II. LEGAL STANDARD

Section 301 of the LMRA gives federal district courts subject matter jurisdiction in "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Although the Third Circuit has not decided whether § 301 permits federal courts to compel tripartite arbitration, it has stated in dicta that "it appears that on a proper record a District Court clearly would have the authority to provide for joint arbitration on a labor dispute." *I.B.E.W., Local Union 269 v. Lighton Indus. Inc.*, Civ. No. 10-2473, 2010 WL 5069943, at *11 (D.N.J. Dec. 6, 2010) (quoting *Window Glass Cutters v. American St. Gobain Corp.*, 428 F.2d 353, 355 (3d Cir. 1970)). In reliance on that language, as well as *Columbia Broad. Sys., Inc. v. Am. Recording & Broad. Ass'n* ("*CBS*"), 414 F.2d 1326 (2d Cir. 1969), the district court in *RCA Corp. v. Local Union 1666 I.B.E.W.*, 633 F. Supp. 1009, 1012–15 (E.D. Pa. 1986), ordered two unions to participate in tripartite arbitration with an employer to resolve disputes over work assignments made by the employer, where the employer risked inconsistent arbitration awards and the two unions were competing for the same benefits. *Id.*

More recently, in *Emery Air Freight, Corp. v. Int'l Bhd. of Teamsters, Local 295*, the Second Circuit reaffirmed its holding in *CBS* that § 301 provides jurisdiction over an employer's suit to enjoin an arbitration commenced by one union and to force that union and another into three-way arbitration with the employer. 185 F.3d 85, 88 (2d Cir. 1999) (citing *CBS*, 414 F.2d at 1328). Other Circuit Courts have likewise recognized a district court's power to compel tripartite arbitration, even in the absence of explicit contractual authorization, and no Circuit Court has held otherwise. *See, e.g.*, *United States Postal Serv. v. National Rural Letter Carriers' Ass'n*, 959 F.2d 283, 286 (D.C. Cir. 1992); *Retail, Wholesale and Dep't Store Union, Local 390 v. Kroger Co.*, 927 F.2d 275, 278–79 (6th Cir. 1991); *United States Postal Serv. v. American Postal Workers Union*, 893 F.2d 1117, 1120 (9th Cir. 1990); *Local No. 850, Int'l Ass'n of Machinists & Aerospace Workers v. T.I.M.E.–DC, Inc.*, 705 F.2d 1275, 1277–78 (10th Cir. 1983).[2]

This Court is persuaded that it has jurisdiction to grant the requested relief and will determine whether tripartite arbitration is warranted in the present suit. Such a determination is within the discretion of this Court. *See Emery*, 185 F.3d at 91 (citations omitted). In making the determination, a district court may consider equitable factors and other relevant factors, as well as

---

[2] Local 825 argues that, under the Norris–LaGuardia Act ("NLA"), 29 U.S.C. §§ 101–115, this Court lacks jurisdiction to enjoin its bilateral arbitration with Utility in order to compel tripartite arbitration. (D.E. 20 at 36–39.) Under the NLA, a "district court may issue an injunction regarding a 'labor dispute' only if it holds a hearing, takes testimony from witnesses subject to cross-examination and makes a series of factual findings." *Emery*, 185 F.3d at 89 (citing 29 U.S.C. § 107.) However, the NLA does not preclude jurisdiction over Plaintiffs' complaint because it is a "limit on remedial authority, not subject matter jurisdiction." *Id.* (citing *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560–61 (1968)). Furthermore, in the Third Circuit, compliance with the procedural requirements of the NLA in a labor dispute is required only where the "relief fashioned by the district court involves one or more injunctions" and "a judicially-carved exception" does not apply. *Lukens Steel Co. v. United Steelworkers of Am. (AFL-CIO)*, 989 F.2d 668, 676 (3d Cir. 1993). Because this Court is not granting an injunction in this matter, conformity with the NLA's procedures is not required. However, the Court notes that staying a bilateral arbitration to compel a tripartite arbitration likely falls under a judicially-carved exception. *See Emery*, 185 F.3d at 89 (applying *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 458–59 (1957)).

"(i) the breadth of the relevant arbitration provisions; (ii) the existence (or likelihood) of conflicting arbitration awards, (iii) the compatibility of the arbitration procedures in the two collective bargaining agreements, (iv) the retrospective or prospective nature of the awards, and (v) whether the employer should have known of the potential conflict in its incipiency and should have acted to prevent it." *Id.* (internal citations omitted).

## III.  DISCUSSION

Plaintiffs rely on an assortment of cases compelling tripartite arbitration; however, these cases generally involved two competing unions claiming jurisdiction over the same jobs provided by one employer. *See, e.g.*, *Emery*, 185 F.3d 85; *RCA*, 633 F. Supp. 1009. That is not the case here, where Local 825 and Local 15024 claim jobs provided by different employers: Local 825 claims operator jobs provided by Utility and Local 15024 claims operator jobs provided by P&A. To the extent that there is any overlap between these jobs, it is because, pursuant to the Utility-Local 825 CBA, Local 825 claims operator jobs that are subcontracted by Utility to other employers, including operator jobs that are subcontracted to P&A. (*See* Utility-Local 825 CBA at 1; Grievances.)[3]  Such overlap is created by Utility's own actions and not by an inherent contradiction in the Plaintiffs' legal obligations to the Defendants.

Plaintiffs assert that the Defendants are in fact claiming jurisdiction over the same jobs because Utility and P&A are a single (or joint) employer under the LMRA.[4] (Compl. ¶ 3.) Defendants dispute that Plaintiffs are entitled to such status, and Plaintiffs have not provided any documentation or factual support for their claim to be a single or joint employer. Because the legal conclusion is alleged without any factual support, the Court declines to classify Plaintiffs as a single or joint employer at this time.

---

[3] Plaintiffs argue that their hiring practices were in accordance with a 35-year work-sharing agreement that was reached by the parties in 1983. (D.E. 6-1 at 4.) No documentation supporting the existence of this agreement has been provided to the Court, and Local 825 disputes its existence. (D.E. 20 at 13–14.)

[4] The Supreme Court and Third Circuit have not provided guidance on what constitutes a single or joint employer under the LMRA. *See Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. 160 E. 22nd St. Realty, LLC*, Civ. No. 15-0889, 2017 WL 3749743, at *3–4 (D.N.J. Aug. 29, 2017). However, in the context of the National Labor Relations Act, a "'single employer' relationship exists where two nominally separate entities are actually part of a single integrated enterprise." *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982). To make the determination, courts look for "(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership." *Id.*; *see also Operative Plasterers & Cement Masons Int'l Ass'n Local 8 v. AGJ Const., LLC*, Civ. No. 08-6163, 2009 WL 2243900, at *4–5 (D.N.J. July 24, 2009) (applying the *Browning-Ferris* factors in the LMRA context); *IBEW Local 102 Welfare, Pension, Annuity & Joint Apprenticeship Training Funds & Their Boards of Trustees v. BCG Solar, LLC*, Civ. No. 13-4473, 2015 WL 5996320, at *4 (D.N.J. Oct. 13, 2015) (same). The similar "'joint employer' concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment." *Browning-Ferris*, 691 F.2d at 1123 (emphasis removed) (citations omitted). "The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Id.* (citation omitted). Here, Plaintiffs have not factually alleged the factors of either test.

Even if Plaintiffs could establish single or joint employer status at this stage, several of the *Emery* factors weigh against them. There are no conflicting arbitration awards at the moment, nor are there any arbitration awards,[5] and the likelihood of conflicting arbitration awards is not a foregone conclusion (factor ii). This is especially true because the Utility-Local 825 arbitration is limited to four discrete projects in the past—any award to Local 825 will be entirely retrospective (factors ii and iv). Finally, Plaintiffs were fully aware of their obligations to Defendants when they entered into their respective CBAs; instead of acting then to prevent the potential conflict, P&A acted to create potentially conflicting arbitration awards by requesting arbitration with Local 15024 only after Local 825 requested arbitration with Utility (factor v).[6]

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion Requesting Tripartite Arbitration is **DENIED**.[7] An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
Leda D. Wettre, U.S.M.J.

---

[5] In the Second, Sixth, and Tenth Circuits, tripartite arbitration is available as a remedy after conflicting arbitration awards are issued. *See Emery*, 185 F.3d at 91–92; *Kroger*, 927 F.2d at 280; *Local No. 850*, 705 F.2d at 1278. *But see Louisiana–Pacific Corp v. International Bhd. of Elec. Workers*, 600 F.2d 219, 223–26 (9th Cir. 1979) (requiring employers to seek tripartite arbitrations before bilateral arbitration proceedings become final).

[6] Plaintiffs have made no showing with respect to the remaining *Emery* factors.

[7] Plaintiffs request, in the alternative, an arbitration between all parties under a Harmony Agreement between United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC ("USW International," Local 15024's parent international union) and North America's Building Trades Unions ("NABTU," which is affiliated with Local 825). (D.E. 6-1 at 2, 4–5 (citing D.E. 6-3 ("Harmony Agreement")).) This request is denied, as no party to this litigation is a party to the Harmony Agreement. (*See* Harmony Agreement at 1 (stating that the agreement is between United Steelworkers of America (USW International's predecessor organization) and Building and Construction Trades Department (NABTU's former name)).) Furthermore, standing to invoke the dispute resolution procedures contained within the Harmony Agreement is limited to the parties to the agreement, *i.e.*, employers and individual local unions do not have such standing. (*Id.* ¶ 7.)